IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

STEVIE A. JONES, :
: 
      Plaintiff, :
:
v. : Civ. No. 20-1542-CFC
:
SGT. CALLOWAY, et al., :
:
      Defendants. :

---

Stevie A. Jones, James T. Vaughn Correctional Center, Smyrna, Delaware, Pro Se Plaintiff.

**MEMORANDUM OPINION**

April 5, 2022
Wilmington, Delaware

**CONNOLLY, Chief Judge:**

I.  **INTRODUCTION**

Plaintiff Stevie A. Jones, an inmate at James T. Vaughn Correctional Center[1] in Smyrna, Delaware, filed this action pursuant to 42 U.S.C. § 1983. (D.I. 2) He filed a supplement to the Complaint on October 21, 2021. (D.I. 10) Plaintiff appears *pro se* and has been granted leave to proceed *in forma pauperis*. He has filed a request for counsel and a motion for default judgment. (D.I. 11, 12) The Court proceeds to review and screen the matter pursuant to 28 U.S.C. §§ 1915(e)(2)(b) and 1915A(a).

II.  **BACKGROUND**

The following facts are taken from the Complaint and its supplement and assumed to be true for screening purposes. *See Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). Plaintiff claims Defendants violated his rights under the First, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

On February 3, 2020, during the intake process at Sussex Correctional Institution, Defendant Sgt. Calloway asked Plaintiff if he was gay and what he weighed. (D.I. 2 at 5) Calloway made a disparaging comment and told Plaintiff that he was increasing his weight in the system because Calloway did not want to deal with placing Plaintiff in protective custody. (*Id.*) Plaintiff alleges that Calloway failed to follow institutional policy with regard to "small homosexual individuals," that Calloway violated Plaintiff's right to Equal Protection by not affording him the same rights as other inmates because Plaintiff is homosexual, and that Calloway violated the Eighth Amendment by subjecting Plaintiff to physical and sexual abuse from general population inmates. (*Id.*)

---

[1] The incidents Plaintiff complains of occurred from February 3, 2020 to August 5, 2020 while he was housed at Sussex Correctional Institution.

1

After Plaintiff had written "numerous letters to custody staff and to Prison Rape Elmination Act personnel" and "express[ed] safety concerns to medical staff," Calloway removed Plaintiff from his cell on February 10, 2020 and asked him in front of officers and inmates, "do we have a problem?" (*Id.*) Plaintiff indicated that he did not want any trouble and locked back into his cell. (*Id.*) Plaintiff alleges that Calloway's "thoughts" of Plaintiff quickly permeated through the minds of Calloway's co-workers and began a chain reaction of discriminatory conduct by other officers. (*Id.* at 6)

On February 13, 2020, Defendant C/O Lauro Diaz yelled at Plaintiff and called Plaintiff a "fucking fag" in front of the entire inmate population in the recreation yard. (*Id.*) Plaintiff responded that he would not be disrespected and Diaz yelled, "lock the fuck in fag." (*Id.*) Plaintiff asked to be placed in protective custody. (*Id.*) Diaz pepper sprayed Plaintiff in the face at point blank range and slammed Plaintiff to the ground. (*Id.*) Plaintiff was handcuffed behind his back and dragged off the tier. (*Id.*) Diaz packed up Plaintiff's property that was in his cell. (*Id.*) The property, which included documents about various officers' misconduct, legal work for his criminal case, and grievances, was confiscated and never returned. (*Id.* at 7)

On July 12, 2020, Plaintiff was in line to have his temperature taken and complained to prison authorities that the nursing staff were not disinfecting the medical equipment between use of inmates. (D.I. 10 at 6) Plaintiff alleges that he was subjected to contracting COVID-19 because medical staff would not disinfect the medical equipment.[2] (*Id.* at 8) Every inmate refused temperature checks until the equipment was disinfected. (*Id.* at 6) Officers told Plaintiff to "pack your shit" and

---

[2] There are no allegations that Plaintiff contracted COVID.

2

escorted Plaintiff to administrative segregation. (*Id.* at 6) Plaintiff alleges this was in retaliation because he complained about the medical staff. (*Id.* at 8)

When Plaintiff was transferred to administrative segregation, he was housed in a single-bunk cell with another inmate whose mattress was on the floor. (*Id.*) The toilet did not work for four days. (*Id.*) Plaintiff complained, and correctional officers attempted to repair the toilet "to no avail." (*Id.* at 7) Plaintiff alleges this violated the Eighth Amendment. (*Id.* at 8) Plaintiff remained in the cell from July 12, 2020 through August 5, 2020[3] when he was transferred to JTVCC. (*Id.* at 7) Plaintiff alleges he was the only inmate who was transferred, and that the transfer was made in retaliation for his complaints about the medical staff. (*Id.* at 8)

Plaintiff alleges that he was strip searched multiple times between July 12, 2020 and July 16, 2020 in violation of the Fourth Amendment. He alleges that he was housed in a Secured Housing Unit (SHU), away from general population inmates and under constant surveillance, and that the multiple strip searches were unwarranted and inexcusable. (*Id.*)

Plaintiff alleges violations of his First and Eighth Amendments rights, when on January 21, 2021, and still housed in the SHU at JTVCC, he was placed on a tier surrounded with mental health inmates, and he endured mental abuse for several months. (*Id.* at 9) Plaintiff alleges that he has "high anxiety" and constantly feared for his life, resulting in in the deterioration of his mental stability. (*Id.*) He further alleges that the institutional lighting policy for SHU dramatically impedes any possibility of sleep,

---

[3] The supplement states that Plaintiff was transferred to JTVCC on August 5, 2021. The original complaint states that the incidents at SCI occurred from February 3, 2020 to August 5, 2020. (See D.I. 2 at 4; D.I. 10 at 8)

3

in violation of the Eighth Amendment. (*Id.*) Plaintiff filed a grievance and complained about the lighting and was told that it is non-grievable. (*Id.*)

Finally, Plaintiff alleges that JTVCC will not give him a job so that he may accumulate "good days." (*Id.* at 11) Plaintiff is currently on the "waiting list." (*Id.*) He alleges this is a "ploy to cover-up arbitrary practices." (*Id.*)

Plaintiff alleges that Diaz's overall conduct was retaliatory and that his actions prevented Plaintiff from working on his criminal case and "permanently removed all hope of Plaintiff appealing directly to his sentencing judge." (*Id.* at 7) Plaintiff states that the missing documents prove that his current sentence is incorrect; and that Diaz violated his right of access to the courts in violation of the First Amendment, deprived him of his property in violation of the Fifth Amendment, subjected him to cruel and unusual punishment in violation of the Eighth Amendment when he called Plaintiff a fag in front of the inmate population and failed to attempt to protect Plaintiff from physical and sexual abuse from other inmates, and violated Plaintiff's Fourteenth Amendment rights due to discrimination based upon Plaintiff's sexual preference. (*Id.* at 7-8)

Plaintiff alleges that Defendant grievance officer Lt. Dean Blade conspired with Calloway and Diaz to cover-up his subordinates' misconduct and constitutional violations, because every grievance and complaint Plaintiff submitted was dismissed for "no evidence supports grievant's complaint" regardless of the evidence. According to Plaintiff, Blade's investigation found no violations despite Plaintiff's evidence to the contrary and Blade conducted "sham" reviews in his official capacity as grievance chairperson. (*Id.* at 8-9) Plaintiff alleges that Blade violated his right to access the courts and right to equal protection. (*Id.* at 9)

4

With regard to the events at SCI from February 3, 2020 to August 5, 2020, Plaintiff alleges that he wrote to Defendant SCI Warden Truman Mears on numerous occasions about every incident described in the Complaint. (*Id.* at 9) Plaintiff alleges that Mears failed to act in his official capacity as warden to resolve the constitutional violations and failed to do anything "except [to] inform [the] grievance officer to award plaintiff a portion of said loss [sic] property, but not to include legal paperwork. He declined to address that issue." (*Id.*) Plaintiff alleges that he wrote a "multitude of complaints" to Mears about Diaz's and Blade's conduct, and that Mears' "inaction" could state a viable claim that Mears violated his rights under the Fourth and Eighth Amendments because he knew of a widespread history of abuse and failed to act. (*Id.* at 9-10) With regard to the July 2020 incidents, Plaintiff alleges that Mears was notified of his grievances, "failed to remedy the situation, and could be held responsible as overseer" of SCI. (D.I. 10 at 9)

Plaintiff alleges that Mears is also the warden at JTVCC. (D.I. 10 at 9) The Court takes judicial notice that the official web-site for the Delaware Department of Correction states that Robert May is the current warden at JTVCC and that Mears is the current warden at SCI. *See* https://doc.delaware.gov/views/facilities.blade.shtml (last visited Apr. 4, 2022). Plaintiff alleges that in Mears' role at JTVCC, Mears failed to correct or remedy Plaintiff's grievances and encouraged the continuation of retaliatory practices against him. (D.I. 10 at 11) He alleges the retaliatory conduct consisted of being housed in SHU for over a year after he submitted numerous grievances seeking redress of his complaints. (*Id.* at 12)

Plaintiff seeks declaratory and injunctive relief as well as nominal, compensatory, and punitive damages.

5

### III. LEGAL STANDARDS

A federal court may properly dismiss an action *sua sponte* under the screening provisions of 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b) if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013); *see also* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The Court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *See Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (citations omitted).

A complaint is not automatically frivolous because it fails to state a claim. *See Dooley v. Wetzel*, 957 F.3d. 366, 374 (3d Cir. 2020) (quoting *Neitzke v. Williams*, 490 U.S. 319, 331 (1989)); *see also Grayson v. Mayview State Hosp.*, 293 F.3d 103, 112 (3d Cir. 2002). "Rather, a claim is frivolous only where it depends 'on an "indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario.'" *Dooley v. Wetzel*, 957 F.3d at 374 (quoting *Mitchell v. Horn*, 318 F.3d 523, 530 (2003) and *Neitzke*, 490 U.S. at 327-28).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when

deciding Rule 12(b)(6) motions. *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Fed. R. Civ. P. 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)). However, before dismissing a complaint or claims for failure to state a claim upon which relief can be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, the Court must grant a plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d at 114.

A complaint may be dismissed only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Though "detailed factual allegations" are not required, a complaint must do more than simply provide "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (internal quotation marks omitted). In addition, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *See Williams v. BASF Catalysts LLC*, 765 F.3d 306, 315 (3d Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Twombly*, 550 U.S. at 570). Finally, a plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, 574 U.S. 10 (2014). A complaint may not be dismissed for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 10.

A court reviewing the sufficiency of a complaint must take three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that,

because they are no more than conclusions, are not entitled to the assumption of truth; and (3) assume the veracity of any well-pleaded factual allegations and then determine whether those allegations plausibly give rise to an entitlement to relief. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotations omitted). Elements are sufficiently alleged when the facts in the complaint "show" that the plaintiff is entitled to relief. *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## IV. DISCUSSION

### A. Eleventh Amendment

Plaintiff raises claims against Defendants in their individual and official capacities. The Eleventh Amendment of the United States Constitution protects an unconsenting state or state agency from a suit brought in federal court by one of its own citizens, regardless of the relief sought. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984); *Edelman v. Jordan*, 415 U.S. 651 (1974). "A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citations omitted); *Ali v Howard*, 353 F. App'x 667, 672 (3d Cir. 2009). The § 1983 claims seeking monetary damages against Defendant state officials in their official capacities are barred by the Eleventh Amendment. *See id.*

The State of Delaware has neither consented to Plaintiff's suit nor waived its immunity. Therefore, the claims against Defendants in their official capacities seeking monetary damages will be dismissed.

### B. Claims Against Warden Mears

Plaintiff appears to raise claims against Mears based upon his supervisory position as SCI Warden. He alleges that he wrote to Mears on numerous occasions about each alleged incident that occurred from February 3 to August 5, 2020 and received no response. He alleges that numerous complaints were made to Mears about the conduct of Diaz and Blade, and nothing was done. He alleges that Mears was notified of his grievances concerning the July 2020 incidents and, as overseer of SCI, Mears failed to remedy the situation. Finally, Plaintiff alleges that Mears, when acting as JTVCC warden, encouraged continued retaliatory practices against Plaintiff.

Plaintiff does not indicate when he wrote to Mears. Nor does the Complaint indicate if Plaintiff or someone else was the person who made the numerous complaints to Mears about Diaz and Blade, or when the complaints were made. In addition, the warden's participation in the after-the-fact review of grievances or letters is not enough to establish personal involvement as required for claims under 42 U.S.C. § 1983. *See e.g.*, *Davis v. Correctional Med. Services*, 436 F. App'x 52 (3d Cir. 2011) (affirming dismissal of claim that prison official who did not respond to a letter written by inmate failed to allege a constitutional violation); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (allegations that prison officials and administrators responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and

administrators in the underlying deprivation). The warden's failure to respond to Plaintiff's letters or grievances does not state a constitutional claim.

Finally, it is well-established that there is no respondeat superior liability under § 1983. *See Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016). Here, Plaintiff's vague and conclusory allegations do not suffice to impose liability upon the warden. *See Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (defendant in a civil rights action "cannot be held responsible for a constitutional violation which he [ ] neither participated in nor approved"; personal involvement in the alleged wrong is required.)

Mears will be dismissed as a defendant for the reasons discussed.

### C. Fourteenth Amendment

Plaintiff alleges that Calloway violated his right to Equal Protection by not affording him the same rights as other inmates because Plaintiff is homosexual, that Diaz violated his Fourteenth Amendment rights due to discrimination based upon Plaintiff's sexual preference, and that Blade violated his right to equal protection.

The Supreme Court has not explicitly recognized sexual orientation as a suspect class, and federal courts across the country have declined to identify homosexuals as a protected class. *See Bowen v. Gilliard*, 483 U.S. 587, 602 (1987) (discussing criteria for suspect or quasi-suspect classification); *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 28 (1973) (same). *See also Price-Cornelison v. Brooks*, 524 F.3d 1103, 1113 n.9 (10th Cir. 2008) (collecting cases). Here, Plaintiff does not plead that he was treated differently from similarly situated individuals. *See Fletcher v. Phelps*, 5 F. Supp. 3d 655, (D. Del. 2013, *aff'd*, 639 F. App'x 85, 88 (3d Cir. 2015) (affirming dismissal of inmate's equal protection claim on grounds that homosexuals are not a suspect class or

protected class for equal protection purposes); *Williams v. Wetzel*, 2020 WL 583983, at *14-15 (M.D. Pa. Feb. 6, 2020), *aff'd*, 827 F. App'x 158 (3d Cir. 2020) (quoting *Smith v. Mazvekiewicz*, 2010 WL 3191894, at *2 (W.D. Pa. Aug. 11, 2010) (Sexual orientation, however, is not a suspect classification, and courts "have declined to identify homosexuals as a protected class") and *Sherrill v. City of Hoboken*, 2020 WL 64617, at *7 (D.N.J. Jan. 6, 2020) (noting that "sexual orientation has not been recognized as a protected class under federal law").

In addition, no matter how offensive and derogatory the language that any of the three Defendants allegedly used with respect to Plaintiff's sexual orientation, that alone does not give rise to a constitutional claim. *See Aleem-X v. Westcott*, 347 F. App'x 731 (3d Cir. 2009) (verbal abuse of a prisoner, even of the lewd variety, is not actionable under 42 U.S.C. § 1983).

Plaintiff fails to plead a facially plausible equal protection claim. Therefore, the Court will dismiss the equal protection claims raised against Calloway, Diaz, and Blade as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

### D.     Eighth Amendment

Plaintiff alleges that Calloway violated the Eighth Amendment by subjecting him to physical and sexual abuse from general population inmates, that Diaz failed to attempt to protect Plaintiff from physical or sexual abuse from other inmates, and that Diaz used excessive force when he pepper-sprayed Plaintiff in the face, slammed Plaintiff to the ground, and dragged him off the tier.

The Court will dismiss the failure to protect claims. The Complaint does not allege that Plaintiff was actually physically and sexually abused by general population

11

inmates or other inmates or contain any facts to support a failure to protect claim. Instead, the claim is pled in a conclusory manner.

Plaintiff has alleged what appears to be a non-frivolous excessive force claim against Diaz and he may proceed with that claim.

### E. First Amendment

Plaintiff states (1) that his property was packed up by Diaz; (2) that although some of his property was returned to him, his legal documents that prove his current sentence is incorrect were not; and (3) that Diaz's acts violated Plaintiff's right of access to the courts in violation of the First Amendment.[4]

Prisoners must be allowed "adequate, effective and meaningful" access to the courts. *Bounds v. Smith*, 430 U.S. 817, 822 (1977) (holding that prisons must give inmates access to law libraries or direct legal assistance). "Many courts have found a cause of action for violation of the right of access stated where it was alleged that prison officials confiscated and/or destroyed legal materials." *Zilich v. Lucht*, 981 F.2d 694, 695 (3d Cir. 1992) (citations omitted). The Court liberally construes the allegations and will allow Plaintiff to proceed against Diaz on the access to the courts claim.

### F. Fifth Amendment

Plaintiff alleges that Diaz deprived him of his property in violation of the Fifth Amendment. A due process claim based on the deprivation of his personal property is

---

[4] Throughout the Complaint Plaintiff alleges retaliation by various defendants. However, the retaliation claims as pled are conclusory and are not cognizable. *See Watson v. Rozum*, 834 F.3d 417, 420 (3d Cir. 2016) (to establish a retaliation claim Plaintiff must allege that: (1) his conduct was constitutionally protected; (2) he suffered an adverse action at the hands of prison officials; and (3) his constitutionally protected activity was a substantial or motivating factor in the decision to discipline him).

not actionable under 42 U.S.C. § 1983 unless there is no adequate post deprivation remedy available. *See Parratt v. Taylor*, 451 U.S. 527, 542 (1981), *overruled on other grounds* by 474 U.S. 327 (1986)); *Harris v. McMullen*, 609 F. App'x 704, 705 (3d Cir. 2015). Because Delaware provides an adequate remedy by filing a common law claim for conversion of property, Plaintiff cannot maintain a cause of action pursuant to § 1983. *Harris*, 609 F. App'x at 705. The claim will be dismissed.

### G. Grievance Process

Plaintiff alleges that Blade conspired with Calloway and Diaz to cover-up misconduct and constitutional violations because every grievance and complaint Plaintiff submitted was dismissed and Blade conducted sham reviews in his role as grievance chairperson. The filing of prison grievances is a constitutionally protected activity. *Robinson v. Taylor*, 204 F. App'x 155, 157 (3d Cir. 2006). To the extent that Plaintiff bases his claims upon his dissatisfaction with the grievance procedure or denial of his grievances, the claims fail because an inmate does not have a "free-standing constitutionally right to an effective grievance process." *Woods v. First Corr. Med., Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)). Notably, the denial of grievance appeals does not in itself give rise to a constitutional claim as Plaintiff is free to bring a civil rights claim in District Court. *Winn v. Department of Corr.*, 340 F. App'x 757, 759 (3d Cir. 2009) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991).

Plaintiff cannot maintain a constitutional claim based upon his perception that his grievances were not properly processed, that they were denied, or that the grievance

process is inadequate. Therefore, the Court will dismiss the claim as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

### H. Conspiracy

As just discussed, Plaintiff alleges that Blade conspired with Calloway and Diaz to cover-up misconduct and constitutional violations because every grievance and complaint Plaintiff submitted was denied. It appears that Plaintiffs raises the conspiracy claim under 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3). The claim fails under either statute.

To state a conspiracy claim under § 1983, Plaintiff must show that "persons acting under color of state law conspired to deprive him of a federally protected right." *Gannaway v. Berks Cty. Prison*, 439 F. App'x 86, 93 (3d Cir. 2011). "[T]he linchpin for conspiracy is agreement." *Id.* (quoting *Bailey v. Board of Cty. Cmm'rs*, 956 F.2d 1112, 1122 (11th Cir. 1992). As discussed above, Plaintiff has no constitutional right to a grievance procedure. In addition, Plaintiff alleges in a conclusory manner, without supporting facts to show that there was an agreement, implicit or otherwise, to deprive Plaintiff of his federal rights.

The claim under § 1985(3) also fails. To state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege: "(1) a conspiracy of two or more persons; (2) motivated by racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of person to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or to the deprivation of any right or privilege of a citizen of the United States." *Petrosian v. Collins*, 479 F. App'x 409, 410 (3d Cir. 2012) (citing *Brown v. Philip Morris Inc.*, 250

14

F.3d 789, 805 (3d Cir. 2001). As discussed above, Plaintiff's sexual orientation is not a suspect class or protected class for equal protection purposes. Nor does Plaintiff allege a race-based discriminatory animus. Accordingly, the claim will be dismissed.

I.     **Prison Policy/Procedure**

Finally, Plaintiff alleges that Calloway failed to follow institutional policy as it pertains to "small homosexual individuals." These allegations do not rise to the level of a constitutional violation.

"To establish liability under 42 U.S.C. § 1983, a plaintiff must show that the defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury." *Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005). "[Section] 1983 merely provides a mechanism for enforcing individual rights 'secured' elsewhere, *i.e.*, rights independently 'secured by the Constitution and laws' of the United States." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002). Federal and state regulations such as Delaware Department of Correction policies do not give rise to a liberty interest. *See Rambert v. Beard*, 2012 WL 760619, at *13 (M.D. Pa. Mar. 7, 2012) (compiling cases and holding that "[f]ederal and state regulations in and of themselves do not create a liberty interest" in the disputed DOC procedure at issue).

Here, there are no allegations that housing policy in question is a provision in the Constitution or federal law. It is a policy of the Delaware Department of Correction. Calloway's alleged failure to follow the procedure for housing homosexuals is not in itself a violation subject to § 1983.

### J. Request for Counsel

Plaintiff requests counsel on the grounds that he is unable to afford counsel; his imprisonment greatly limits his ability to litigate; the issues are complex and will require significant research and investigation; he has limited law library access and limited knowledge of the law; a trial will likely involve conflicting testimony and counsel will better enable Plaintiff to present evidence and cross-examine witnesses; and he has made repeated attempts to retain counsel. (D.I. 11)

A *pro se* litigant proceeding *in forma pauperis* has no constitutional or statutory right to representation by counsel.[5] *See Brightwell v. Lehman*, 637 F.3d 187, 192 (3d Cir. 2011); *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993). However, representation by counsel may be appropriate under certain circumstances, after a finding that a plaintiff's claim has arguable merit in fact and law. *Tabron*, 6 F.3d at 155.

After passing this threshold inquiry, the Court should consider a number of factors when assessing a request for counsel. Factors to be considered by a court in deciding whether to request a lawyer to represent an indigent plaintiff include: (1) the merits of the plaintiff's claim; (2) the plaintiff's ability to present his or her case considering his or her education, literacy, experience, and the restraints placed upon him or her by incarceration; (3) the complexity of the legal issues; (4) the degree to which factual investigation is required and the plaintiff's ability to pursue such investigation; (5) the plaintiff's capacity to retain counsel on his or her own behalf; and

---

[5] *See Mallard v. United States Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296 (1989) (§ 1915(d) (now § 1915(e)(1)) does not authorize a federal court to require an unwilling attorney to represent an indigent civil litigant, the operative word in the statute being "request.").

(6) the degree to which the case turns on credibility determinations or expert testimony. *See Montgomery v. Pinchak*, 294 F.3d 492, 498-99 (3d Cir. 2002); *Tabron*, 6 F.3d at 155-56. The list is not exhaustive, nor is any one factor determinative. *Tabron*, 6 F.3d at 157.

Several of the *Tabron* factors militate against granting Plaintiff's request for counsel at this time. First, this case is in its early stages and no defendant has been served. In addition, Plaintiff's filing indicates that he can ably represent himself and present his claims. Also, contrary to Plaintiff's assertions, the issues are not complex. Accordingly, the Court will deny the request for counsel without prejudice to renew.

### K.     Default Judgment

Plaintiff has filed a motion for default judgment. (D.I. 12) The motion will be denied. The parties have not been served, and there has been no entry of default. *See* Fed. R. Civ. P. 55(a) and (b).

### V.     CONCLUSION

For the above reasons, the Court will: (1) deny Plaintiff's request for counsel without prejudice to renew (D.I. 11); (2) deny Plaintiff's motion for default judgment (D.I. 12); (3) allow Plaintiff to proceed against Diaz on the excessive force and access to the courts claims; and (4) dismiss all remaining Defendants and claims pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1).

An appropriate order will be entered.